Margaret SHOOK, Appellant,

v.

Wesley HERMAN, M.D., Appellee.

No. 0587–01243–CV.

Court of Appeals of Texas,
Dallas.

Oct. 6, 1988.
Rehearing Denied Nov. 14, 1988.

Alfred W. Ellis, Dallas, for appellant.

J. Stephen Gibson, Dallas, for appellee.

Before WHITHAM, BAKER and KINKEADE, JJ.

BAKER, Justice.

Margaret Shook appeals from a summary judgment granted in favor of Dr. Wesley Herman in Shook's medical malpractice suit against Dr. Herman. Shook contends that the trial court erred in granting summary judgment based upon the statute of limitations or, alternatively, erred in granting summary judgment on the basis that Dr. Herman was not negligent in his care and treatment of Shook. We disagree with these contentions and affirm the trial court's judgment.

Shook's original petition alleged that on or about November 23, 1983, Dr. Herman negligently performed unnecessary laser surgery on her left eye and negligently treated her in the follow-up after said surgery. Dr. Herman filed a motion for summary judgment, alleging that the care and treatment he provided was in accordance with the applicable standard of care for the treatment afforded Shook and that he was not negligent. As an alternate ground, Dr. Herman also alleged that Shook's cause of action was barred by the statute of limitations contained in the Medical Liability and Insurance Improvement Act. TEX.REV. CIV.STAT.ANN. art. 4590i, § 10.01 (Vernon Supp.1988). Dr. Herman's motion for summary judgment was supported by his affidavit.

Subsequently, Shook filed her first amended original petition. For the first time, this pleading alleged that Dr. Herman was negligent in assisting in the performance of an intraocular lens placement in her left eye on August 9, 1982, and that he was negligent in the follow-up care and medication provided to her after the lens implant surgery. She realleged her claims regarding the laser surgery and follow-up care. She also alleged that Dr. Herman continued to treat her until June 15, 1985.

At the time the amended petition was filed, Shook also filed a response to Dr. Herman's motion for summary judgment, contending that genuine issues of fact existed as to when the treatment by Dr. Herman was completed. She argued that the situation was a case of continuous treatment negligently done and that her claims were not barred by limitations. She argued further that there were fact issues concerning Dr. Herman's negligence. She attached portions of her deposition and Dr. Herman's deposition to her response to Dr. Herman's motion for summary judgment. On June 4, 1987, the trial court entered a partial summary judgment, reciting that Shook take nothing by her claims against Dr. Herman arising out of the laser surgery on her left eye and the follow-up care and treatment related to the surgery.

Subsequently, Dr. Herman filed his second motion for summary judgment, asserting that Shook's allegations of his negligence in the placement of the lens implant on August 9, 1982, and the follow-up care and medication provided to her after the surgery were barred by the applicable provisions of article 4590i, section 10.01. Shook responded to this motion for summary judgment, continuing to assert her position that there were genuine issues of fact concerning the date of last treatment and that Dr. Herman was not entitled to a summary judgment as a matter of law. On October 5, 1987, the trial court entered a final summary judgment that Shook take nothing by her claims against Dr. Herman.

Shook correctly cites the relevant authority for the standards applicable to appellate review of a summary judgment, and these standards are so well established that they need not be repeated. These standards, as applied to the case at hand, in part focus our inquiry on the construction of the statute of limitations applicable to a medical malpractice claim.

By adoption of the Medical Liability and Insurance Improvement Act, the legislature established an absolute two-year period of limitations. Section 10.01 of this article establishes three events which trigger the running of the absolute two-year statute of limitations. These are: (1) the occurrence of the breach or tort; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. This three-date scheme was intended to aid the plaintiff who had difficulty ascertaining a precise date on which his injury occurred, specifically in circumstances where the claim arose from a course of treatment or a period of hospitalization that extended for a period of time. *Morrison v. Chan,* 668 S.W.2d 483, 485 (Tex.App.—Fort Worth 1984) (en banc), *aff'd,* 699 S.W.2d 205 (Tex. 1985). We are concerned here only with parts one and two of section 10.01 since Shook is not asserting any claim arising out of hospitalization.

At oral argument, Shook contended that her claims against Dr. Herman are not allegations of specific acts but constitute allegations of negligence over a course of treatment beginning in August 1982 and continuing through June 15, 1985. She argued that the situation is one of initial misdiagnosis and a continuous course of mistreatment. She contends that her claims are such that a specific breach or tort is not easily ascertainable; therefore, the statute of limitations does not begin to run until the course of treatment provided by Dr. Herman was completed. She argues that a genuine issue of fact exists as to when the treatment provided by Dr. Herman was completed. She asserts that Dr. Herman's summary judgment proof is inconsistent as between his affidavit and his deposition and that there exists a genuine issue of fact as to whether his treatment concluded on April 26, 1984, or at the later date of July 15, 1985. In essence, her position is that the whole situation involves an ongoing chain of events that are not separable into specific breaches or torts. We disagree.

Shook's basic allegations of negligence against Dr. Herman, as contained both in her pleadings and her brief, can be summarized as follows:

1. Placement of a lens implant in her left eye on August 9, 1982;

2. Follow-up care and medication provided to her after the lens placement;

3. Performance of unnecessary laser surgery on her left eye on November 30, 1983; and

4. Follow-up care provided to her following said laser surgery.

Additional relevant facts on the limitations issue are as follows:

April 26, 1984—the last date that Dr. Herman could have seen Shook personally.

June 15, 1985—the date Dr. Herman dissolved his partnership with Dr. W.S. Harris.

July 30, 1985—the date of a letter from Shook's attorney to Dr. Herman requesting Shook's medical records.

April 21, 1986—notification letter from Shook's attorney to Dr. Herman that she would seek damages for medical malpractice.

July 14, 1986—the date suit was filed.

■ Under the first event of the three-date scheme, when the precise date of the specific breach or tort is ascertainable from the facts of the case, the limitations period runs from the date of the breach or tort. *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987).

The second provision permits limitations to run "from the date the medical or health care treatment that is the subject of the claim ... is completed" and contemplates a situation wherein the patient's injury occurs during a course of treatment for a particular condition and the only readily ascertainable date is the last day of treatment. Such a situation often arises in suits alleging misdiagnosis or mistreatment. *Kimball,* 741 S.W.2d at 372. In this connection, the relevant treatment must be the subject of the claim. *Vinklarek v. Cane,* 691 S.W.2d 108, 109–10 (Tex.App.—Austin 1985, writ ref'd n.r.e.); *Atha v. Polsky,* 667

S.W.2d 307, 308, 309–10 (Tex.App.—Austin 1984, writ ref'd n.r.e.).

■ It is without dispute in the record that of the four alleged negligent events, the dates are fixed as to three of them. The date of the lens implant was August 9, 1982. The time frame of the follow-up care and medication for this procedure was from the date of the implant to the date of the laser surgery. The third event, the laser surgery, occurred on November 30, 1983. The precise dates of the breach or tort alleged in events numbered one and three are ascertainable from the facts, and the clear language of section 10.01 requires the limitations period to run from the date of that breach or tort. Therefore, Shook was required to give her statutory notice of these two claims within two years of either date and then to file suit seventy-five days after the required notice. TEX.REV.CIV. STAT.ANN. art. 4590i, §§ 4.01, 10.01 (Vernon Supp.1988). Since she did not file suit until July 14, 1986, we hold that section 10.01 bars her claim for either the lens implant or the laser surgery. *Kimball,* 741 S.W.2d at 372.

■ With regard to item number two, the follow-up treatment and medication after the lens implant surgery, the date of last treatment concluded at the time the laser surgery was performed. Accordingly, under the theory of a mistreatment claim, she would have been required to give her statutory notice within two years of November 30, 1983, and to file suit within seventy-five days thereafter. This she failed to do. We hold that section 10.01 bars her claim for follow-up care and medication subsequent to the lens implant. *Kimball,* 741 S.W.2d at 372.

Shook's fourth assertion of negligence on Dr. Herman's part is the follow-up care provided to her subsequent to the laser surgery. Under her theory, she contends there is a fact question concerning when this course of treatment concluded, alleging that date as June 15, 1985. Dr. Herman contends the date of last treatment is when he last personally saw Shook. Hence, Shook contends there is a genuine issue of fact as to the last date of treatment.

■ Even though there may be a fact question on the last date of treatment, independent of his summary judgment ground of the bar of limitations to this allegation of negligence, Dr. Herman also asserted that he was entitled to a summary judgment because he was not negligent in his follow-up care and treatment of Shook after the laser surgery. Dr. Herman supported his summary judgment motion with his own personal affidavit. Such affidavit, even though made by Dr. Herman as the defendant in the malpractice suit, is considered proper summary judgment evidence. TEX.R.CIV.P. 166a(c); *Duncan v. Horning,* 587 S.W.2d 471, 473 (Tex.Civ. App.—Dallas 1979, no writ). A summary judgment may be based on uncontroverted testimonial evidence of an interested expert witness as to the subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. Rule 166a(c); *Duncan,* 587 S.W.2d at 473.

■ Dr. Herman's affidavit sets out his qualifications, describes the services he performed for Shook, states that he acted in accordance with the standard of care prevalent in Dallas County, Texas, specifically denies each of the allegations of negligence contained in Shook's petition and states the opinion based upon a reasonable degree of medical probability, that no act or omission on his part caused any damage to Shook. The evidence furnished by this affidavit is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies. Accordingly, it meets the requirements established in *Duncan* and is proper summary judgment proof. Therefore, Dr. Herman's summary judgment evidence establishes that there are no genuine issues as to any material facts regarding Shook's claim of negligence in his care and treatment following the laser surgery. This evidence establishes Dr. Herman's entitlement to summary judg-

ment as a matter of law. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

Since Dr. Herman established his right to summary judgment on this ground, we must consider whether Shook avoided judgment on this ground by presenting controverting summary judgment proof. Shook, through her attorney, filed a response to Dr. Herman's motion for summary judgment. However, she did not file a controverting affidavit. The record reveals that her response relied on portions of her deposition and the deposition of Dr. Herman, which were attached to her response. Her response contends that Dr. Herman's affidavit is in conflict with his deposition testimony and further that his deposition testimony raises genuine issues of fact with regard to his negligence. She further alleges in her response that her deposition testimony likewise raises genuine issues of fact as to Dr. Herman's negligence.

In a medical malpractice case, the requisite proof of negligence must be established through expert testimony. *Hood v. Phillips*, 554 S.W.2d 160, 165–66 (Tex. 1977). For a patient to maintain a cause of action against a doctor for malpractice, either in diagnosis or recognized treatment, that patient is required to prove by a doctor of the same school of practice as the defendant that the diagnosis or treatment complained of was such as to constitute negligence and that it was a proximate cause of the patient's injuries. *Hart v. Van Zandt*, 399 S.W.2d 791, 797 (Tex. 1965). Shook's response and her excerpted portions of depositions are insufficient to raise a fact question because she makes medical conclusions about Dr. Herman's medical treatment and standard of care which she is not qualified to make. A lay witness's conclusions are not competent summary judgment evidence and cannot be considered for the purpose of controverting expert opinion evidence. TEX.R.CIV.P. 166a(e); *Hart v. Van Zandt*, 399 S.W.2d at 792; *Bowles v. Bourdon*, 148 Tex. 1, 4, 219 S.W.2d 779, 782 (1949). We conclude that Shook has failed to present competent medical evidence sufficient to raise a fact

issue and to rebut the summary judgment proof presented by Dr. Herman. *Duncan*, 587 S.W.2d at 474.

We overrule Shook's two points of error and affirm the trial court's judgment.