**Charlene P. HOLT, M.D., Faap, Appellant,**

v.

**Daniel Edmund EPLEY, M.D., Appellee.**

No. 07–94–0078–CV.

Court of Appeals of Texas, Amarillo.

March 2, 1995.

Rehearing Overruled April 3, 1995.

Helm, Pletcher, Bowen & Saunders, Houston (John W. Tavormina and Carl D. Kulhanek, Jr.), for appellant.

Gibson, Ochsner & Adkins, Amarillo (Thomas C. Riney and John A. Schmit), for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

In this medical malpractice case, appellant Charlene P. Holt (Holt), challenges a take-nothing summary judgment rendered in favor of appellee Daniel Edmund Epley (Epley). For reasons stated below, we affirm the judgment of the trial court.

Holt is a pediatric oncologist who began working at the Don and Sybil Harrington Cancer Center in Amarillo in June of 1987. In October of that year, she had mammographies performed on her at the Harrington Cancer Center. The resulting mammograms were interpreted by radiologist Gayle Bickers, who detected no malignancy. The following year, Holt again had mammograms made at the Harrington Cancer Center. This set of mammograms were interpreted on October 3, 1988 by appellee Epley, a radiologist. Epley found no malignancy but requested a "compression spot view" of the left breast be taken for further analysis. Epley interpreted the results of this second test on October 12, 1988 and found no malignancy.

On June 14, 1989, Holt detected a lump in her left breast and sought another mammogram, which was made the next day. Because Epley was not available, the mammogram was read by Doctor Fulton of High Plains Baptist Hospital. Fulton recommended that a biopsy be taken. On June 19, 1989, Holt's surgeon conducted the biopsy, concluded that it indicated the presence of cancer, and performed a radical mastectomy on her left breast. Further testing indicated that the cancer in her left breast was "tubular sub-type intraductal cancer" which indicated a higher risk for cancer in her right breast.

On July 28, 1989, Holt returned to see Epley for an analysis of the mammogram of

her right breast made on June 15 of that year. Epley made a written report describing an area that "should be suspect for malignant change" and recommended a biopsy or additional mammogram within six months. Soon thereafter, Holt notified her surgeon that radiologists other than Epley had examined her June 15, 1989 mammogram and expressed concern about an area in her right breast. On August 3, 1989, Holt underwent a radical mastectomy on her right breast.

On May 30, 1991, Holt sent a notice of claim for medical malpractice to nine defendants, including Epley. *See* Tex.Rev.Civ. Stat.Ann. art. 4590i, § 4.01 (Vernon Supp. 1995). On August 12, 1991, Holt filed suit against Epley and twelve other defendants for medical malpractice, fraud, intentional and negligent infliction of emotional distress, tortious interference with contract, civil conspiracy, and defamation.

By order dated August 17, 1992, the trial court severed Holt's claims against all but Epley and three other defendants. Epley filed this motion for summary judgment on July 21, 1993. In support of his motion, Epley asserted the two-year limitation on medical malpractice actions set out in section 10.01 of the Texas Medical Liability and Insurance Improvement Act,[1] lack of causation arising from any negligent acts within the limitations period, and the absence of negligence. After a hearing, the trial court granted Epley's motion, severed the claims against him from those against the remaining defendants, and rendered the take-nothing judgment giving rise to this appeal.[2]

In four points of error, Holt asserts the trial court erred in rendering its judgment. In her first and third points, she contends the trial court erred because the summary judgment evidence establishes that she filed her suit within two years of the last negligent act or omission, or within two years of the completion date of the treatment that is the subject of her claim. In her second point, Holt alleges the affidavit of her expert, McClure Hall, raises fact issues concerning each of the elements of her cause of action.

By her fourth point, she asserts that Epley failed to establish that the application of the two-year limitations period does not violate the open courts provision of the Texas Constitution.

■ As this appeal comes to us from a summary judgment proceeding, we must apply the well established standards for reviewing a trial court's granting of summary judgment. As set out by our supreme court in *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546 (Tex.1985), they are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true;

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Id.* at 548–49. A defendant who moves for summary judgment must disprove, as a matter of law, at least one of the essential elements of each of the plaintiff's causes of action, *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991), or must establish a defense as a matter of law, *Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex.1993); *Rowntree v. Hunsucker*, 833 S.W.2d 103, 104 (Tex.1992).

■ The issues concerning appellant's first and third points are dependent on the application of section 10.01 of the Medical Liability and Insurance Improvement Act which provides:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; . . . .

---

1. Tex.Rev.Civ.Stat.Ann. art. 4590i (Vernon Supp. 1995).

2. Pursuant to settlement agreements, all claims except the medical malpractice claims against Epley were dismissed.

Tex.Rev.Civ.Stat.Ann. art. 4590i, § 10.01 (Vernon Supp.1995). Under this section, there are three possible dates from which medical malpractice liability claims run: (1) the date of the breach or tort, (2) the date the health care treatment that is the subject of the claim is completed, or (3) the date the hospitalization for which the claim is made is completed. *Chambers*, 883 S.W.2d at 158. The completion of hospitalization is not relevant to the facts of this case and need not be addressed.

Under the evidence, the only specific event which occurred within the two years before the notice of claim was Epley's July 28, 1989 evaluation of the mammogram of Holt's right breast. However, Holt argues that this was only the last event in Epley's continuing course of treatment for her condition of "breast cancer," thereby avoiding any limitation defense to Epley's October 1988 interpretations of her mammograms.

The gist of Holt's argument under her first and third points is that she commenced her action [3] within two years of both the date of the occurrence giving rise to her claim and the date the course of treatment was completed. Under the summary judgment evidence, the occurrences from which Holt's claims against Epley arise are three specific transactions, *viz.*, the October 3, 1988 mammogram reading, the October 12, 1988 mammogram reading and the July 28, 1989 mammogram reading.

■ Discussion of the limitation question raised by Holt in her first and third points requires that we initially consider whether limitations bars her recovery for any malpractice resulting from the October 1988 events. In asserting it does not do so, Holt initially relies upon the case of *Chambers v. Conaway*, 883 S.W.2d 156 (Tex.1993).

In *Chambers*, the patient went to Dr. Chambers, who was the family's physician, concerning a lump in her breast. Chambers referred her to a radiologist who found no malignancy but recommended another mammogram "in about one year." Upon her own initiative, the patient had another mammo-

gram made almost three years later. The results of that mammogram indicated the need for a sonogram, which was performed, but did not indicate the lump was malignant. The results of these tests were provided to Chambers who, on June 16, 1986, after reviewing the results, told the patient, "Your breast is fine." Although he continued to act as the patient's family physician for almost two years thereafter, Chambers took no further action concerning the possibility of breast cancer. During that period of time, the patient experienced breast cancer symptoms but did not advise Chambers.

The patient was subsequently diagnosed with breast cancer and commenced a malpractice claim against Chambers. The suit was filed within two years of her last visit to Chambers but more than two years subsequent to the last time she had any consultation with, or treatment from, him concerning breast cancer. The trial court granted Chambers summary judgment concluding the two-year limitation period commenced on the last date she had consulted with the doctor regarding breast cancer and had thus run prior to the filing of the suit.

In upholding the intermediate court's reversal of the judgment, the Texas Supreme Court noted that the plaintiff had filed with her response an expert's affidavit to the effect that in view of the surrounding circumstances, as a "primary family doctor," Chambers was negligent in failing to perform any follow-up diagnostic tests. If this were accepted, as it must be in a summary judgment appeal, the court reasoned that Chambers's failure to perform the additional testing was a continuing tort by omission which continued until the patient's last visit to Chambers. *Id.* at 158.

However, under the evidence in this case, *Chambers* is distinguishable. Epley was not Holt's primary physician but was a specialist performing a specific service. In the affidavit upon which Holt relies, her expert states, "Epley's failure to correctly interpret these mammograms so as to detect this progres-

---

3. Because Holt filed her petition within the 75–day tolling of limitations that results from the required notice of claim, Tex.Rev.Civ.Stat.Ann. art. 4590i § 4.01(c) (Vernon Supp.1995), references to the date she commenced her action are to the date her notice of claim was made.

sive enlargement (of the lesions) fell below the standard of care applicable to him." Nowhere does the expert assert Epley had a duty to perform additional diagnostic tests or was negligent in failing to do so.

Analyzed, the factors that persuaded the *Chambers* court that the doctor had a continuing duty to monitor and perform additional tests were 1) he was a primary care physician, and 2) he was aware of both a lump and an abnormal mammogram. Neither of those factors are present in this case.

■ We next address Holt's argument that her claims for Epley's negligence in October 1988 were not barred because they were part of a continuing course of treatment. In *Kimball v. Brothers,* 741 S.W.2d 370 (Tex.1987), the court explicated that "the three-date scheme contained in § 10.01 of Article 4590i was intended to aid the plaintiff who had difficulty ascertaining a precise date upon which his injury occurred," and went on to point out that "[w]hen the precise date of the specific breach or tort is ascertainable from the facts of the case, section 10.01 requires the limitation period to run from the date of the breach or tort." *Id.* at 372. That rule has been applied repeatedly by Texas courts. *See Maxwell v. Mani,* 892 S.W.2d 146 (Tex.App.—Houston [14th Dist.] 1994, n.w.h.); *Stover v. Gormley,* 883 S.W.2d 278, 282 (Tex.App.—Amarillo 1994, n.w.h.); *Desiga v. Scheffey,* 874 S.W.2d 244, 248 (Tex. App.—Houston [14th Dist.] 1994, no writ); *Marchal v. Webb,* 859 S.W.2d 408, 417 (Tex. App.—Houston [1st Dist.] 1993, writ denied) (on rehearing); *Shook v. Herman,* 759 S.W.2d 743, 746 (Tex.App.—Dallas 1988, writ denied); *Dougherty v. Gifford,* 826 S.W.2d 668, 673 (Tex.App.—Texarkana 1992, no writ); *Thames v. Dennison,* 821 S.W.2d 380, 383 (Tex.App.—Austin 1991, writ denied).

■ Although Holt argues that Epley did not raise the question of the inapplicability of her continuing course of treatment theory,

we disagree. In his motion, Epley identified two of the three relevant dates from which a health liability claim can run.[4] Although the term "continuing course of treatment" was not specifically used in the motion, Epley's argument that any negligence on his part could not have occurred beyond October 12, 1988 was sufficient to apprise the court of his position that that date was a readily ascertainable one sufficient to defeat a claim of a continuing course of treatment.

The summary judgment evidence was sufficient to establish that the dates of any alleged negligence on the part of Epley were readily ascertainable. Although Holt argues the July 1989 visit to Epley was the completion date of a continuing course of treatment, we disagree. That visit concerned a breast different from the one giving rise to Holt's claims of negligence in October 1988. Indeed, at the time of Holt's July 1989 visit, her left breast, which was the subject of her October 1988 negligence claim, had been removed in June 1989, more than a month before her July visit. We are convinced that under the teaching of *Kimball* and its progeny,[5] Holt's claims did not arise from a continuing course of treatment by Epley sufficient to toll the running of limitations. Consequently, Holt's first and third points of error are overruled.

In her second point, Holt argues summary judgment was improper because "the affidavit of McClure H. Hall, M.D. raises a fact question as to each element of Dr. Holt's malpractice action against Dr. Epley." Having held that Epley established his affirmative defense of limitations concerning his October 1988 activities, our discussion under this point is limited to Holt's claims arising out of her July 1989 visits to Epley.

■ In his motion, Epley argues that as far as the July 28, 1989 mammogram interpretation is concerned, the summary judg-

---

**4.** The date of completion of hospitalization was not relevant to the facts of the case and was not discussed in the motion.

**5.** We note Holt's citation of *Jones v. Cross,* 773 S.W.2d 41 (Tex.App.—Houston [1st Dist.] 1989, writ denied), where the court held that the defendant-movant had failed to establish that follow-

up care after three surgeries was not part of a course of treatment. Although this case might facially conflict with the *Shook* case we have cited above, we need not address that question because under this record, Holt's July 1989 visit to Epley was not a follow-up to the services he performed in October 1988.

ment evidence established that his actions on that date "did not cause the damages she is alleging." The evidence Epley references in support of this argument includes Holt's deposition testimony that she suffered no physical harm as a result of that report. She did, however, state that it caused her emotional trauma because she "wondered how many other women of the 300 or more that had been x-rayed might be in the same boat." Parenthetically, Holt did allege "mental anguish" as an element of her damages.

■ In her response to Epley's summary judgment motion, Holt offered no evidence other than the portion of her deposition testimony we quoted above yet contends that such evidence is sufficient to show that she suffered emotional trauma. That contention requires us to consider the quantum of evidence necessary to support an award of damages for mental anguish or emotional distress. In addressing those claims as an element of damages, Texas courts have defined them as requiring a high degree of mental suffering resulting in a mental sensation of pain. *See Wichita County v. Hart,* 892 S.W.2d 912 (Tex.App.—Austin 1994, n.w.h.); *Cronin v. Bacon,* 837 S.W.2d 265, 269 (Tex. App.—Fort Worth 1992, writ denied). It is also established that mere disappointment, anger, resentment, or embarrassment, without more, are not sufficient to meet that standard. *Phar–Mor, Inc. v. Chavira,* 853 S.W.2d 710, 713 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Tarrant Bank v. Miller,* 833 S.W.2d 666, 669 (Tex.App.—Eastland 1992, writ denied); *Worsham Steel Co. v. Arias,* 831 S.W.2d 81, 85 (Tex.App.—El Paso 1992, no writ); *Cactus Drilling Co. v. McGinty,* 580 S.W.2d 609, 611 (Tex.Civ. App.—Amarillo 1979, no writ).

Even when taken as true, as required when evaluating a summary judgment, the fact that Holt "wondered" about the accuracy of other women's tests is simply insufficient to demonstrate mental anguish as that term is defined by law. *See, e.g., Tarrant Bank,*

833 S.W.2d at 669. Holt's second point is overruled.

■ In her fourth point, Holt argues that application of the limitations provision of the Medical Liability and Insurance Improvement Act to her case violates article I, section 13 of the Texas Constitution (the open courts provision). In doing so, she points to several cases where similar claims, commonly known as the "open courts defense," have been upheld.[6] To successfully establish that defense to application of a limitations defense, a plaintiff must allege that application of the two-year limitation defense cut off her cause of action before she knew or should have known the cause of action existed. *Hellman v. Mateo,* 772 S.W.2d 64, 66 (Tex.1989); *Morrison v. Chan,* 699 S.W.2d 205, 207 (Tex.1985). In a summary judgment context, when facts setting up an open courts defense have been alleged, the party seeking to rely on the limitations statute must negate the open courts defense. *Desiga,* 874 S.W.2d at 248.

That being so, we must examine the summary judgment evidence to determine if it establishes that Holt had a reasonable opportunity to discover her injury and bring suit before the running of the two-year limitations period. Initially, Epley points to the deposition testimony of Holt that, while recovering from her first mastectomy in June 1989, she expressed to Jack McCullough, the director of the Harrington Cancer Center, that she "felt that [her] cancer had been misdiagnosed in the 88 film."[7] That statement reveals that Holt was aware of 1) her injury, 2) its cause, and 3) the identity of the potentially culpable party within eight months of the accrual of her cause of action. *See Adkins v. Tafel,* 871 S.W.2d 289, 294 (Tex.App.—Fort Worth 1994, no writ).

Approximately two months later, on August 28, 1989, Holt wrote to Gerald Dodd, Chief of Radiology at the M.D. Anderson Hospital in Houston, expressing her concerns

---

**6.** Holt's assertion that these cases have imposed a "modified discovery rule" on the limitations provisions of article 4590i is incorrect. *Desiga v. Scheffey,* 874 S.W.2d 244, 248 (Tex.App.—Houston [14th Dist.] 1994, no writ); *Rhodes v. McCar-*

*ron,* 763 S.W.2d 518, 523 (Tex.App.—Amarillo 1988, writ denied).

**7.** This was the mammogram interpreted by Epley in October of 1988.

about the "diagnostic quality and advice" she had received from the doctors in Amarillo. In this letter, she also asked Dodd to give his evaluation of the mammograms interpreted in 1988 and 1989. Among those mammograms were those interpreted by Epley. Around the end of 1989, Dodd told Holt the mammograms interpreted in 1988 and 1989 showed the presence of cancer. Around that same time, Holt contacted Jim Helspar, another expert, concerning Helspar's willingness to be an expert witness for her. By letter and written reports dated May 8, 1990, McClure Hall, another of Holt's expert witnesses, asserted to Jim B. Brown, an attorney whom Holt had contacted, that the mammograms made on September 29, 1988 and October 11, 1988 showed evidence of malignancy and the interpretations to the contrary were below the standard of those expected of radiologists.

These events occurred before the end of the two-year limitation period on October 12, 1990. The summary judgment evidence shows Holt was aware of her cause of action in June 1989. Even Holt does not deny that she was aware of her cause of action by February 1990, some eight months before the end of her limitations period. The summary judgment evidence is sufficient to show, as a matter of law, that the "open courts defense" was not available to Holt. Thus, application of the limitation period established by section 10.01 of the Medical Liability and Insurance Improvement Act to her is not unconstitutional. *Desiga*, 874 S.W.2d at 246, 252; *Work v. Duval*, 809 S.W.2d 351, 354 (Tex.App.—Houston [14th Dist.] 1991, no writ). Holt's fourth point is overruled.

In summary, all of Holt's points are overruled and the judgment of the trial court affirmed.